849 F.2d 1472
 47 Ed. Law Rep. 458
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
The BOARD OF TRUSTEES OF the OHIO STATE UNIVERSITY, Plaintiff-Appellee,
v.
U.S. DEPARTMENT OF EDUCATION; William Bennett, Secretary,
U.S. Department of Education; United States of
America, Defendants-Appellants.
 No. 88-3266.
 United States Court of Appeals, Sixth Circuit.
 June 22, 1988.
 
 Before BOYCE F. MARTIN, Jr., MILBURN and RALPH B. GUY, Jr., Circuit Judges.
 PER CURIAM.
 
 
 1
 The United States Department of Education appeals the district court's order enjoining the Department from awarding an educational grant to the University of California at Berkeley and requiring the Department to begin the award process anew. We reverse.
 
 
 2
 The Carl D. Perkins Vocational Education Act, 20 U.S.C. Sec. 2404, requires the Department to establish and fund a National Center for research in vocational education. In order to remedy perceived weaknesses in this nation's vocational education system, Congress allocated $30 million which is to be awarded to the designated institution in five annual installments. As prescribed by statute, the selection of the most appropriate recipient is made by the Department with the advice of a panel of nationally-recognized experts. 20 U.S.C. Sec. 2404(a)(2). Regulations promulgated by the Department specify the substantive programmatic criteria by which this panel is to judge the applications for the National Center grant. 34 C.F.R. Sec. 417.31. After the panel completes its review and makes its recommendation as to which applicant should receive the funding, the Department begins negotiating with the recommended applicant to assure full technical and legal compliance with the statute and the regulations and to clarify some programmatic issues. At the conclusion of this process, the Department makes its final designation and awards the grant.
 
 
 3
 On January 4, 1988, after having funded the National Center at Ohio State University for ten years under two successive five-year arrangements, the Department awarded the grant to Berkeley. Berkeley's application, which received the highest score from the panel of experts, proposed that the National Center be located at Berkeley and supplemented by a series of subcontracts with five other institutions. Berkeley's original application called this arrangement a "consortium." The application, however, explained that this label was being used "generically," and, following negotiations with the Department, all such references were eliminated.
 
 
 4
 On January 8, 1988, Ohio State brought this action. Ohio State alleged that the Department had "failed to follow statutory, regulatory, and equitable requirements" in determining to award the grant to Berkeley. Among other things, Ohio State sought temporary, preliminary, and permanent injunctive relief requiring the Department to vacate the award to Berkeley and to repeat the grant award process.
 
 
 5
 On March 15, 1988, after having entered and extended a temporary restraining order, the district court issued a permanent injunction ordering the Department to vacate the designation of Berkeley as the recipient of the National Center, return Berkeley's application as ineligible, and begin anew the award process "in strict compliance" with the governing statute and the applicable regulations. The court based its decision on the following grounds: 1) Berkeley's original application stated that the Center would be run by two co-directors whereas the statute requires a single director; 2) Berkeley's application was submitted on behalf of a consortium and, therefore, was not in compliance with the statute which authorized the Department to fund a center "associated with a university;" 3) Berkeley's application did not provide that it would make a "substantial" financial contribution toward the running of the Center as required by the statute; 4) the Department violated minimal standards of fairness by including two individuals who had previous contacts with the National Center at Ohio State as members of the application review panel; and 5) the Department improperly failed to have the panel review Berkeley's "amended" application following the negotiation process.
 
 
 6
 This court previously granted the Department's motion for an expedited appeal, and we now reverse the district court's decision.
 
 
 7
 Before turning to the specific issues raised here, we emphasize that our standard of review is a deferential one that presumes the validity of the Department's decision. As one of the panel's members, Judge Guy, wrote in National-Southwire Aluminum Co. v. United States Environmental Protection Agency, 838 F.2d 835 (6th Cir.1988), the Supreme Court in Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402 (1971),
 
 
 8
 established a two-step procedure for judicial review of statutory construction by an administrative agency. 'First, as always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter....' [citation omitted]. If, however, 'the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.' [citation omitted]. '(A) court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency.' [citation omitted].
 
 
 9
 838 F.2d at 838. In short, we must defer to the Department's decision, unless it is based on an impermissible interpretation of the governing statute or the agency's regulations promulgated pursuant to it.
 
 
 10
 The Department's appeal, therefore, essentially presents two issues. First, because almost all of the alleged deficiencies in Berkeley's application were corrected during negotiations with the Department, we must decide whether the statute permits the Department to negotiate with the proposed grantee so as to make such non-programmatic modifications. Second, if such negotiated corrections are permissible under the statute, we must decide whether the statute permits the Department to award the grant to an applicant who proposes to conduct the National Center through a series of subcontracts with several other institutions.[1] We believe both aspects of the Department's decision were based on permissible interpretations of the law and the applicable regulations.
 
 
 11
 The regulation which establishes the requirements for a National Center grant application is 34 C.F.R. Sec. 417.20. This regulation, which directly parallels the language in 20 U.S.C. Sec. 2404(a)(2), provides that "[a]n application must describe the financial contribution the public or private nonprofit university will make towards the establishment of the National Center." These minimal threshold requirements indicate that the Department has interpreted the statute as allowing a two-stage grant competition process. During the initial application stage, any application which is not facially-deficient is reviewed by a panel of experts which assesses the substantive merits of the application. After the panel ranks the applicants on the basis of programmatic quality, the Department enters into negotiations with the institution whose application was deemed by the panel to be the best. The Department's regulations clearly contemplate that such a negotiation process will take place. See 34 C.F.R. Secs. 75.230 and 75.231. Such a flexible grant review process is necessary where, as here, the award is a large, complex one. Moreover, nothing in the statute suggests that the panel of experts must review any changes, especially non-programmatic changes, made in the application during the negotiating process. Therefore, because the grant award process followed here does not constitute an impermissible interpretation of the governing statute, the district court erred in holding that clarifications in the Berkeley proposal achieved during the negotiating process rendered the award to Berkeley invalid.
 
 
 12
 In light of this conclusion, we need not determine whether the "consortium" arrangement outlined in Berkeley's original application satisfies the statute. We need only decide whether the ultimate subcontractual arrangement was consistent with the statutory requirements.
 
 
 13
 Although the legislative history suggests that Congress emphasized the need to provide "a 'critical mass' of resources in one center," 122 Cong.Rec. 11, 13380 (May 11, 1976) (remarks of Rep. Mottl), the statute expressly authorizes the National Center to conduct its activities "directly and through subcontracts." 20 U.S.C. Sec. 2404(b). Therefore, Congress has implicitly allowed the funds allocated under this legislation to be dispersed, to some degree, among several institutions. Because the statute does not specify to what degree the funds may be dispersed through subcontracts, the Department must exercise its discretion to choose an applicant whose proposal falls within the range anticipated by Congress. It is precisely these kinds of discretionary judgments which Congress traditionally leaves to an agency's expertise. Therefore, because we cannot say the Department's decision to approve Berkeley's application constituted an impermissible interpretation of the statute's discretionary limits, we hold that the district court erred by invalidating the Department's decision based on the court's own interpretation of the relevant statute.
 
 
 14
 Having considered all of the issues raised by the parties, and having reviewed the record before us, we hereby reverse the district court's decision, and we remand this case with instructions to dissolve the injunction and dismiss Ohio State's complaint.
 
 
 
 [1]
 As stated above, the district court concluded that the work of the reviewing panel was invalid because two of its members had had previous contacts with the National Center at Ohio State. Ohio State, however, has not alleged that either member was biased in any way. In the absence of such allegations, the district court's decision with respect to this issue constituted an unwarranted reversal of the presumption of regularity that attaches to the performance of agency decisionmakers. See Schweiker v. McClure, 456 U.S. 188 (1982)